UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
MICHELLE K. IN HER OWN RIGHT,       )
AND AS GUARDIAN AND NEXT FRIEND     )
OF ALICE K.,                        )
                                    )
          Plaintiffs                )   CIVIL ACTION NO.
                                    )   13-11414-DPW
v.                                  )
                                    )
PENTUCKET REGIONAL SCHOOL DISTRICT  )
and                                 )
THE BUREAU OF SPECIAL EDUCATION,    )
                                    )
          Defendants.               )
```

*****************************************************************

AND RELATED MATTERS

```
K.,                                 )
                                    )
          Plaintiff                 )   CIVIL ACTION NO.
                                    )   14-10071-DPW
v.                                  )
                                    )
PENTUCKET REGIONAL SCHOOL DISTRICT  )
COMMITTEE, ET AL.,                  )
                                    )
          Defendants.               )

and

KEATING,                            )
                                    )
          Plaintiff                 )   CIVIL ACTION NO.
                                    )   14-10325-DPW
v.                                  )
                                    )
PENTUCKET REGIONAL SCHOOL           )
DISTRICT, ET AL.,                   )
                                    )
          Defendants.               )
```

<u>MEMORANDUM & ORDER</u>
January 16, 2015

Michelle Keating brought the suit docketed as Civil Action No. 13-11414 against the Bureau of Special Education ("the BSEA") and the Pentucket Regional School District ("Pentucket") on her own behalf and on behalf of her daughter, Alicia Keating.[1] Thereafter, two actions, which I find essentially duplicative, Civil Action No. 14-10071 and Civil Action No. 14-10035, were filed by the plaintiffs.  This Memorandum and Order will deal principally with Civil Action No. 13-11414 before turning to dismissal of Civil Action No. 14-10071 and Civil Action No. 14-10035.

Alicia was a student in Pentucket from Kindergarten (1999) through the 12th grade (2012).  The plaintiffs allege that Pentucket knew or should have known since 2002 that she had a disability and that the school district failed to provide her with a "free appropriate public education" ("FAPE") as required by the Individuals with Disabilities Improvement Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.*, failed to properly evaluate her

---

[1] Although referred to in some of the briefing materials as well as the administrative record as Michelle K. and Alicia K., the plaintiffs have used their full names in this and related proceedings, and I will do the same here.  Throughout the remainder of this opinion, I refer to Michelle Keating as "Michelle" and Alicia Keating as "Alicia," to provide specificity of identification.  This is particularly important because there is a dispute regarding whether Michelle may pursue claims or act as a representative on behalf of her daughter who has now reached the age of majority.

educational needs, failed to find her eligible for appropriate educational services, and violated her procedural rights in doing so.

## I.   BACKGROUND

### A.   *Proceedings Before the BSEA*

On May 23, 2012, Michelle initiated a proceeding before the BSEA seeking a hearing regarding Alicia's rights under IDEA, Section 564 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 704 ("Section 504"), and the Americans with Disabilities Act ("ADA").  At the time of the hearing request in May 2012, Alicia was two months shy of her 18th birthday.  In the hearing request, in addition to asserting Alicia's educational rights, Michelle also asserted a claim on her own behalf for reimbursement of the cost of an independent educational evaluation ("IEE") that she had obtained for Alicia.

The BSEA docketed the matter as BSEA # 12-8636 and issued a Notice of Hearing on May 25, 2012.  Following a pre-hearing conference on July 19, 2012, the BSEA bifurcated the proceeding. Under the bifurcation proceeding, the question of reimbursement of Michelle's out-of-pocket expenses incurred in obtaining an IEE would be decided based upon written submissions due August 23, 2012.  A hearing related to the remaining issues, including Alicia's educational needs and whether she was provided FAPE, was set for September 25-26, 2012.  Meanwhile, a separate matter

regarding Michelle's son, Christopher, was docketed as BSEA #12-9569.

Alicia turned 18 on July 25, 2012, approximately two months after the filing of a hearing request with the BSEA.

On August 3, 2012, Pentucket wrote to the BSEA informing it that the parties had reached an agreement in principle and that therefore Pentucket would not be submitting its written argument regarding reimbursement for the costs of the IEE. Pentucket's letter also requested a two week postponement of the scheduled hearing.

That same day Pentucket's counsel emailed a draft settlement proposal to Michelle. The draft proposal stated that it "is made by and between Michelle . . . acting for herself and her minor child, Christopher[,] . . . and Alicia . . . acting on her own behalf, and the Pentucket Regional School District . . . ." It continued to provide:

> PARENT'S Agreement to Dismiss Pending Cases: Upon execution of this document, PARENT will immediately dismiss with prejudice both Alicia's and Christopher's cases pending with the Bureau of Special Education Appeals (BSEA # 12-8636 and BSEA # 12-9569) are dismissed. [sic] PARENT will also dismiss with prejudice her Superior Court Case (Docket # ESCV2011-00691) [a case involving Christopher].
>
> . . .
>
> General Release. This AGREEMENT shall constitute full settlement and release of all claims that might exist between the Parties relating to STUDENTS' regular education, special education, and related services since he and she became a resident of PENTUCKET through

-4-

the date this AGREEMENT is fully executed.  More
particularly, PARENT on her behalf and her minor
child's behalf and Alicia Keating on her behalf
specifically waives all rights against PENTUCKET, its
officers, both elected and appointed, agents,
employees, and/or attorneys that have accrued, or might
have accrued, to them and/or STUDENTS with regard to
the STUDENTS' regular education, special education, and
related services . . .

In a letter dated August 14, 2012, Michelle wrote to Colby

Brunt, an attorney for Pentucket, regarding the proposed

settlement agreement:

I am prepared to sign the settlement agreement on
Christopher's behalf.  Unfortunately, Alicia is not
prepared to sign the settlement agreement on her
behalf.  As the language indicates, now that Alicia is
18 years old I cannot represent her.  I was not
informed at the time of the verbal offer that Alicia's
signature would be required which presents a problem.
First, Alicia has not had the benefit of legal counsel
and second since she personally derives no benefit from
the settlement agreement so she has no incentive to
sign it.  Alicia's motivations are not the same as mine
therefore we have a conflict of interest.

That same day, Michelle wrote to Julie Goldman, a

Massachusetts Assistant Attorney General, regarding her claims

for educational relief brought on behalf of her son Christopher.

She explained that:

I do not have the legal authority to accept the terms
of the settlement agreement Pentucket offered due to
their requirement to attach an unrelated matter to this
instant case requiring my daughter who just turned 18
to sign it on her own behalf.  Alicia has not had the
benefit of legal counsel and I cannot represent my
daughter nor would I want to as it presents a conflict
of interest.

Michelle wrote a letter dated September 14 confirming the request for a postponement of the hearing scheduled for September 25 and 26, and explaining that the parties were working on an agreement in principal which was contingent upon Superior Court approval and enforcement. She also requested a status conference to determine whether the hearing should be rescheduled, withdrawn or dismissed.

On November 20, 2012, the BSEA issued an order to show cause why the case should not be dismissed in light of the indication from the parties that a settlement agreement had been reached.

Michelle responded to the BSEA via letter on November 25, 2012, requesting that the hearing be put back onto the calendar. She closed her letter by writing:

> Lastly, since the hearing request was submitted before Alicia turned 18 on July 25, 2012, pursuant to BSEA Rule I(1) Alicia would like her name added to the hearing request and for me to represent her as her advocate pursuant to BSEA Rule I(6). I remain an aggrieved party, financially as Parent, so I will also continue to represent myself Pro Se (BSEA Rule I(2). If this is not allowable please advise us so that we may seek legal counsel to represent Alicia.

That letter was signed by both Michelle and Alicia. Michelle states that she sent a copy of this letter to Pentucket, but Pentucket has no record of receiving it and was unaware of the letter until February 2013.

On November 28, 2012, there was an exchange of emails between Michelle and Ms. Brunt, with the subject line "stip of dismissal."  Ms. Brunt wrote to Michelle that:

> [Alicia's] case was taken out of the agreement.  The only thing we had in the agreement was the payment of the independent evaluations.  There was nothing about you dismissing her case.  I clarified that issue with Sean.

Michelle replied:

> Sorry but it wasn't.  It went from dismissal with prejudice to dismissal without prejudice, but it's still there.  The document you just attached this morning still contains the same language.

Ms. Brunt then replied:

> Michelle, I just reviewed the agreement and you are correct, but as I clarified to Sean and my recall on this was due to the fact that we were paying you the amount of the evals (your actual costs), the matter needed to be dismissed without prejudice as Alicia is 18 and she could bring her independent educational claims.  That is why we did not need Alicia to sign the agreement.  That said, I could be open to language that states that you withdraw all your claims for reimbursement on the action, but you can still leave the action open regarding the educational claims.  However, my understanding was that the language that is currently in the agreement was agreeable to you when it was proposed some time ago.

On December 3, 2012, Michelle and Pentucket executed a settlement agreement.  Although pertaining mostly to a separate matter - involving Michelle's son Christopher - several paragraphs relate to the matter brought on behalf of Alicia.  Specifically, paragraphs 8 and 9 read:

–7–

> Independent Evaluations for Alicia. PENTUCKET will
> reimburse PARENT the full cost of Alicia's independent
> evaluations ($4418.83). PENTUCKET will issue a check
> directly to PARENT within 60 days of execution of this
> AGREEMENT.

> PARENT'S Agreement to Dismiss Pending Cases. Upon
> execution of this document, PARENT will immediately
> dismiss with prejudice Christopher's case pending with
> the Bureau of Special Education Appeals (BSEA # 12-
> 9569) and the Superior Court Case (Docket # ESCV2011-
> 00691). PARENT will also immediately dismiss without
> prejudice her BSEA case involving her daughter
> [Alicia], (DOB 7/25/1994)(BSEA 12-8636).

The agreement was signed by Michelle and Jeffrey Mulqueen,

Pentucket's superintendent. It was not signed by Alicia.

On December 20, 2012, Michelle sent two letters to the BSEA

and Pentucket. In the first letter she wrote that:

> Pentucket and Parent have settled the issue of
> reimbursement for independent evaluation and as a
> result are providing notice of withdrawal for the
> request for reimbursement to Parent. Pentucket and
> Parent further agreed that the withdrawal would be
> without prejudice, understanding that relying upon
> performance there would be no need to revisit.

The second letter contained five numbered paragraphs

discussing the status of the BSEA proceeding:

> 1.) The settlement of the sole issue of Parent
> Reimbursement for IEE's requires that the hearing
> request be amended to remove this issue. As the
> Parties agreed to settle this issue separately, it is
> my belief that Pentucket has no objection to amending
> the hearing request in order for Alicia to proceed on
> her remaining issues.

> 2.) As Alicia reached the age of majority since the
> original hearing request, in accordance with
> Massachusetts Special Education Regulation 603 CMR
> 28:02 (15) Legal authority of the Parent shall transfer
> to the student when the student reaches 18 years of

age, the balance of the hearing should proceed in Student's name.  While in Massachusetts this process is automatic, because neither Parent nor Student have received any notice regarding this transfer of legal authority, we are requesting the hearing request be amended to reflect the substitution of parties.

3.) Additionally, this letter serves as written notice that Alicia has authorized Mother to appear on her behalf as Authorized Representative in accordance with Standard Adjudicatory Rules of Practice and Procedure 801 CMR 101(3)(a)(b).

4.) The postponement(s) of the hearing date further requires us to amend the hearing request to reflect that the student has since begun placement [at] Landmark College and just completed her first semester. As a result, the hearing request should reflect that Student and Parent are now seeking retroactive reimbursement in addition to prospective funding of her program there and all related costs (transportation, room, board, supplies, books, etc.).  Since this is not a new issue being brought, we do not believe it will prejudice Pentucket nor require new deadlines.

5.) Depending on whether a decision reaches the conclusions requested, the timing of that decision would determine whom payment would need to be directed to as well as the amounts to be paid so we are also requesting Joinder of Mother since Mother is financially responsible for Student until she is emancipated according to Massachusetts law; and if prospective payment is determined to be appropriate, then Landmark College would also need to be Joined in order to facilitate fashioning appropriate relief in accordance with BSEA Hearing Rules I(J).

In response to Michelle's letter, on January 3, 2013, Ms. Brunt wrote that "Pentucket does object to the Parent amending the hearing request.  Per the attached Agreement of the Parties, Parent agreed to dismiss this matter, in full, without prejudice. As such, Pentucket expects to enforce this provision of the agreement and expects that this matter will be dismissed."

Michelle responded on January 14, 2013.  She wrote that she was:

> surprised that Pentucket is opposed to amending the complaint to allow Alicia to pursue her educational claims based on these facts about the settlement agreement:
>
> 1.)  Alicia is 18 years old and was not a party to the settlement agreement;
>
> 2.)  Pentucket (or at least their counsel) fully understood that I was not dismissing her educational related claims and there is no reference at all to them.
>
> . . .
>
> The settlement agreement that Attorney Brunt enclosed for your review is limited to the purpose of resolving my son's educational placement and expenses incurred on behalf of my children . . .
>
> . . .
>
> In the state of Massachusetts, parent's rights transfer to student upon turning 18 . . . Alicia turned 18 on July 25, 2012 so by December 3, 2012 Parent had no legal standing to authorize dismissal of Alicia's educational claims; and as Alicia was not a party in that case she would be unfairly prejudiced by any dismissal of her education claims . . .

Pentucket filed a motion to dismiss BSEA # 12-8636 with the BSEA on February 22, 2013, contending that the December 3, 2012 agreement required dismissal of the matter.[2]  Michelle filed her opposition on March 1, 2013 arguing that because Alicia turned 18

---

[2] Under the BSEA's procedural rules, a party may file a motion to dismiss for "failure to state a claim upon which relief may be granted."   BSEA Hearing Rules for Special Education Appeals ("BSEA Hearing Rules"), XVII(B)(4).

during the course of the proceedings, because she was not a
signatory to the agreement, and because Michelle lacked the legal
capacity to sign for her, the legal agreement did not apply to
Alicia.  She also argued that because Alicia did not receive
consideration for releasing her claims, Alicia is under no
obligation to dismiss her claims, that the BSEA and Pentucket
both unreasonably delayed the resolution of the proceedings,
including by failing to provide for a resolution session, and
that Michelle and Alicia, because they are proceeding *pro se*,
should be excused from strict compliance with contractual
obligations that they did not fully understand or intend to
undertake.

The BSEA issued an order on March 11, 2013 dismissing the
claims as requested by Pentucket.  That order explained that in
the November 25, 2012 letter, Michelle requested that Alicia's
name be added to the case and stated that she (Michelle) would
act as representative for her daughter.  That letter was signed
by both Michelle and Alicia.  The decision continued to explain:

> The effect of the November 25, 20[12] letter was that
> [Alicia] designated [Michelle] as her representative
> before the BSEA . . . [Alicia] has not revoked this
> designation and there is nothing in the Parties'
> Agreement that notes [Alicia]'s dissent.  Thus
> permitting [Alicia] to be represented by [Michelle].
> As such, [Alicia] is bound by [Michelle]'s agreement.
>
> . . .
>
> The plain language of the agreement is that *BSEA #12-
> 8636 is to be dismissed without prejudice.* [Michelle]

however, would have me interpret the agreement in a manner inconsistent with the plain language of the agreement, something that I decline to do.

Accordingly, the BSEA granted Pentucket's motion to dismiss with prejudice the claims relating to Michelle's request for reimbursement and dismissed without prejudice the claims of Alicia.

## II.   PROCEDURAL BACKGROUND

The plaintiffs filed their complaint in No. 13-11414 on June 10, 2013 and amended it on October 28, 2013.  The complaint asserts four separate counts against the BSEA and Pentucket.  The first count is an appeal from the administrative decision seeking reversal of the BSEA's order.  Count II alleges that Pentucket fraudulently misrepresented the contents of the settlement agreement and that the agreement is void or voidable.  Count III alleges that the defendants discriminated against Alicia in violation of her constitutionally protected equal protection rights, including by discriminating against her on the basis of her disability.  The fourth and final count (misnumbered as Count V and to which I continue to refer as Count V in this Memorandum) contends that the defendants failed to reimburse Alicia and Michelle for tuition and other costs incurred in providing an appropriate education to Alicia and, by doing so, violated their rights under IDEA and Section 504.  This count also seeks reimbursement for attorneys' fees under 42 U.S.C. § 1988.

-12-

Pentucket filed a motion to dismiss all of the claims against it.  The BSEA moved to dismiss the counts numbered II, III and V.  Following a hearing on February 4, 2014, I denied the motions to dismiss without prejudice to their renewal at a later date.

Michelle moved for joinder of Alicia as a real party in interest on March 13, 2014.[3]  That same day, Pentucket filed a motion seeking full affirmance of the decision of the BSEA.

On April 2, 2014, the BSEA filed a motion seeking partial affirmance of its decision.  Specifically, the BSEA requested an order affirming that portion of the BSEA decision dismissing with prejudice Michelle's claim for reimbursement of the costs incurred in paying for independent evaluations of Alicia, while requesting remand of Alicia's claims related to educational services.

Both Pentucket and the BSEA have also now renewed their motions to dismiss.

Meanwhile, in addition to the present matter, Michelle filed a separate matter *K.* v. *Pentucket Regional School District Committee et al.*, No. 14-cv-10071-DPW, asserting claims on her own behalf, as well as on behalf of Alicia and her minor child, Christopher.  Alicia has also separately filed a complaint

---

[3] This appears to be in response to Pentucket's motion to strike an affidavit which refers to Alicia as appearing in this matter on her own behalf.

against the BSEA and Pentucket, as well as multiple individual defendants, *Keating* v. *Pentucket Regional School District et al.*, No. 14-cv-10325-DPW.

Following a hearing on June 4, 2014, I issued an Order to Show Cause why these two latter-filed matters should not be dismissed without prejudice to their re-filing at an appropriate later date.  Meanwhile, Michelle informed the Court that she and Alicia had filed a new hearing request with the BSEA on June 13, 2014 docketed as BSEA #1409900.  Michelle stated that "[t]his is for the purpose of administratively exhausting the alleged continuing violations that occurred outside of the record but during the course of BSEA # 12-8636, the cause of action currently under your judicial review."  In a "30 Day Order to Show Cause" dated December 9, 2014, the hearing officer has directed that the case be dismissed for want of prosecution by Alicia in the absence of a written demonstration by January 8, 2015 of good cause by a party why it should not be.  I have not been informed of any further action regarding the show cause order.

### III.   STATUTORY FRAMEWORK

The IDEA, 20 U.S.C. § 1400 *et seq.*, imposes obligations on states receiving federal grants to provide disabled children with "a free appropriate public education".  *See* 20 U.S.C. § 1414(d). The standard of an "appropriate" education requires that the

state provide educational services that are "reasonably calculated to enable the child to receive educational benefits." *Lenn* v. *Portland School Comm.*, 998 F.2d 1083, 1086 (1st Cir. 1993) (quotation omitted).  Under the IDEA, the "central mechanism" for ensuring that students receive FAPE is the joint development of an individualized educational plan.  20 U.S.C. §§ 1401(11) and 1414(d); *Polera* v. *Bd. of Educ. of the Newburgh Enlarged Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002).

The IDEA provides parents with a formal complaint process "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6).  In Massachusetts, the BSEA is the state administrative agency tasked with conducting an impartial due process hearing regarding any such complaint.  603 CMR § 28.08. A party aggrieved by a decision of the BSEA may seek judicial review by filing an action in state or federal court.  20 U.S.C. 1415(i)(2); 603 CMR § 28.08(6).

Section 504 of the Rehabilitation Act prohibits recipients of federal funding from engaging in discrimination on the basis of an individual's disability.  The act, as implemented by regulation, requires that schools provide reasonable accommodations to ensure that disabled students receive FAPE. The BSEA has jurisdiction to resolve disputes regarding whether a

school district has complied with the requirements of Section
504, 603 CMR § 28.08(3), and, as with IDEA disputes, the BSEA's
decision regarding compliance with Section 504 may be appealed to
state or federal court.

## IV.   STANDARD OF REVIEW

The IDEA outlines the procedure for judicial review of a
BSEA decision.   That statute provides that a court "(i) shall
receive the records of the administrative proceedings; (ii) shall
hear additional evidence at the request of a party; and (iii)
basing its decision on the preponderance of the evidence, shall
grant such relief as the court determines is appropriate."   20
U.S.C. § 1415(2)(C)(i)-(iii).

This statute "contemplates an intermediate standard of
review on the trial-court level—a standard which, because it is
characterized by independence of judgment, requires a more
critical appraisal of the agency determination than clear-error
review entails, but which, nevertheless, falls well short of
complete *de novo* review."   *Lenn*, 998 F.2d at 1086.   In the course
of this independent review, the administrative proceedings must
be accorded due weight."   *Id.* (internal citation omitted).   Under
this standard "the judge is not at liberty either to turn a blind
eye to administrative findings or to discard them without sound
reason."   *Id.*   While the factual determinations of the BSEA are
accorded this intermediate level of deference, however, legal

determinations made by the BSEA are subject to *de novo* review by this court and "[a]n evaluative 'finding' on a mixed legal-factual issue cannot stand if it is premised on an error of law." *Ross* v. *Framingham School Committee*, 44 F. Supp. 2d 104, 111-12 (D. Mass. 1999).

## V.   ANALYSIS

### A.   *Count I: Should the BSEA Decision be Affirmed?*

In Count I, Michelle seeks judicial review and reversal of the BSEA's decision.  The BSEA seeks a partial affirmance and a partial remand.[4]  Pentucket seeks full affirmance of the BSEA's decision.

### 1.   The Meaning of the Settlement Agreement

The present dispute among the parties hinges upon the meaning of the language of the December 3, 2012 settlement agreement entered into by Michelle and Pentucket and upon whether that agreement is enforceable.  On these issues, the three parties before me assert three distinct positions.

Michelle's position is that the settlement agreement's language reflects settlement only of those claims that she

---

[4] A footnote of the BSEA's brief in support of partial affirmance and partial remand of the BSEA's decision indicates a divergence of the legal position of the Commonwealth expressed through the Attorney General and presented here, and that of the BSEA itself.  Regardless of this distinction (and regardless of any implications that divergence of opinion may have down the road), I will refer to the legal positions presented in the BSEA's brief as those of the BSEA, as a party in this litigation.

asserted in her own right.  In a July 19, 2012 order, the BSEA
bifurcated the hearing on the claims brought by Michelle,
separating the claims for reimbursement of her expenditures on an
IEE from all other issues, including those related to Pentucket's
obligations to identify Alicia as a child with a learning
disability, Pentucket's alleged failure to provide FAPE, and the
request for compensatory services.  Michelle, at that point,
apparently understood and believed that she lacked the authority
to settle Alicia's educational claims--which only Alicia could
do.  Accordingly, her understanding of the settlement agreement
language stating that: "PARENT will also immediately dismiss
without prejudice her BSEA case involving her daughter [Alicia],
(DOB 7/25/1994)(BSEA 12-8636)" was that this encompassed only
those claims that she (Michelle) could assert on her own behalf,
but left unaffected those claims rightfully belonging to her now
majority-aged daughter Alicia.

The BSEA's position is that, when viewed in full context,
Michelle's attempt to settle Alicia's claims amounts to something
akin to an *ultra vires* action.  Alicia had reached the age of
majority on July 25, 2012.  In the November 25, 2012 letter,
Alicia designated Michelle as an "advocate" pursuant to BSEA Rule
I(6).  The BSEA contends that, while this empowers Michelle to
act as an advocate regarding Alicia's claims before the BSEA, it
does not authorize her to settle Alicia's claims in the manner

done here – that is, in a settlement agreement entered into for purposes of resolving another matter, pertaining almost exclusively to that other matter without the signature of the now-majority aged student – and entered into without any supervision or participation by the BSEA.  This position is supported by certain elements of the settlement agreement.  The first paragraph of the settlement agreement provides that it is being entered into by Michelle Keating "acting for herself and her minor child, Christopher Keating"--without making reference to Alicia and, similarly, the signature block reads "Michelle Keating, for herself and her minor son."  According to the BSEA, while Michelle retained authority to act before the BSEA on Alicia's behalf, her authorization did not extend sufficiently far to allow her to promise the dismissal of her pending claims in a document pertaining to a wholly different matter. Accordingly, the BSEA suggests that it is appropriate for this court to remand those claims which properly belong to Alicia, while affirming the settlement and dismissal of the reimbursement claims belonging to Michelle.

Pentucket, for its part, agrees with the decision of the BSEA hearing officer and seeks full affirmance of the decision below.  According to the school district, on November 25, 2012, Alicia had transferred authority to her mother to act as her agent in regards to Alicia's BSEA hearing.  The letter signed ny

Alicia stated:  "Alicia would like her name added to the hearing request and for me to represent her as her advocate pursuant to BSEA Rule I(6)."  Pentucket contends that the authority granted by that letter was sufficiently broad to permit Michelle to settle and agree to the dismissal of those claims.  This authority was exercised by Michelle when she signed the settlement agreement, the language of which is clear: "PARENT will also immediately dismiss without prejudice her BSEA case involving her daughter [Alicia], (DOB 7/25/1994)(BSEA 12-8636)."

Of the three options presented, I will follow the course suggested by the BSEA and remand this matter to the BSEA for further development regarding both the procedural posture and substantive merits of the claims asserted by Alicia, though for reasons slightly different than those offered.

There are several issues that I believe are insufficiently developed, either in the current administrative record or in the BSEA hearing officer's written decision, which warrant remand.

First, I believe that the language of the settlement agreement is not nearly as clear-cut and unambiguous as Pentucket contends.  In the sentence "PARENT will also immediately dismiss without prejudice her BSEA case involving her daughter [Alicia], (DOB 7/25/1994)(BSEA 12-8636)," the term "her BSEA case" does important work--denoting what will be dismissed.  As noted above, the claims in BSEA # 12-8636 were bifurcated by the BSEA's July

-20-

19, 2012 order.  Michelle possessed in her own right the claims for reimbursement of the amounts she expended to obtain an IEE for her daughter.  Alicia, having reached majority age by the date of the settlement, was and is the real party in interest possessing the substantive educational claims.  Thus, where the contract uses the term "her BSEA case"--rather than, for instance, "the BSEA case" or "her and her daughter's BSEA claims"--Michelle reasonably understood this to refer only to her own claims for reimbursement for an IEE and not those claims which were not "hers" but her daughter's.  I believe that the ambiguity of the term "her BSEA case" precludes entry of dismissal before the parties have had further opportunity to develop the record including whether Michelle and/or Alicia should be permitted to advance parole evidence regarding their understanding of the settlement agreement.

Second, the settlement agreement does not represent the end of the road in this matter.  After the settlement agreement was entered, Michelle and Alicia signed a December 20, 2012 letter sent to both Pentucket and BSEA in which they explained that they wished "to amend[] the hearing request in order for Alicia to proceed on her remaining issues," that "[a]s Alicia reached the age of majority since the original hearing request . . . the balance of the hearing should proceed in Student's name" and, accordingly, that they were "requesting the hearing request be

amended to reflect the substitution of parties." So far as I am able to discern, neither the parties nor the BSEA hearing officer have addressed whether this letter should be treated as notice of a request for a hearing which relates back to, and incorporates the content of, the May 23, 2012 hearing request. Despite perhaps not conforming with all of the niceties of federal pleading practice, the letter provided notice to both Pentucket and the BSEA of Alica's intent to proceed with her substantive claims. By incorporating the earlier filed hearing request, it provided adequate notice of the substance of those claims, of the fact that Alicia would be represented by her mother, Michelle, and of the remaining factual content necessary to satisfy BSEA Hearing Rule I(B). Refusal to treat this letter as notice of request for a hearing--and instead to require Alicia to re-file a duplicative hearing request--may reflect an elevation of form over substance in the BSEA decision.

Finally, as is often the case in such proceedings, matters outside of the courtroom continue apace, and may have now overtaken this proceeding. On June 13, 2014, Alicia, with Michelle, filed another hearing request before the BSEA. This request, brought by Alicia herself, places certain of Alicia's claims properly before the BSEA, regardless of the outcome of the present proceedings, and sets them up to be determined according to their substantive merits. In this connection, I note that

Michelle was careful to assert that the most recent hearing request concerns matters outside of the record before me.  Thus, regardless of whether the BSEA's March 11, 2013 dismissal order, the matter before me in this action, was appropriate, the new claims appear to have independent vitality.  Remand of this matter is appropriate so that all of the matters raised by Alicia may be addressed in the first instance before the BSEA.

    2.   <u>The Statute of Limitations</u>

Having determined to remand this proceeding to the BSEA, and given the complicated procedural posture of the disputes, I believe it worth addressing the elephant lurking in a corner of the room--the statute of limitations--which apparently has served, at least in part, as a motivating factor in Alicia and Michelle's multiple filings.

IDEA provides that a "parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows."  This same limitation is reiterated in BSEA Hearing Rule I(C).  On its face, it is not clear that this rule applies to claims brought by a student on her own behalf--when the text of the rule addresses only hearing requests brought by parents and agencies.

I will not parse whether this limitations period applies to a student bringing claims on her own behalf, however, because I need not.  Regardless of whether a 2-year limitations period applies to Alicia's claims, the running of that limitations period was tolled until she reached the age of majority on July 25, 2012.  Any applicable limitations period would begin running on that date and so would not expire until July 25, 2014.  Thus, the claims of Alicia subject to this action initiated as an appeal of BSEA on June 10, 2013 were within the statute of limitations, which did not begin to run as to her until July 25, 2012.  Moreover, any additional claims she asserts on her own behalf in the June 13, 2014 request for a hearing were timely.  Alicia is thus not barred on statute of limitations grounds from proceeding on additional claims in BSEA #1409900.

**B.    *Should Alicia's Claims be Dismissed?***

An aggrieved party may seek redress before the BSEA of claims arising not only under IDEA, but regarding "any matter concerning the eligibility, evaluation, placement, IEP, provision of special education in accordance with state and federal law, or procedural protections of state and federal law for students with disabilities" and a parent or student may also "request a hearing on any issue involving the denial of the free appropriate public education guaranteed by Section 504 of the Rehabilitation Act, as set forth in 34 CFR §§ 104.31 through 104.39."  603 CMR

28.08(3)(a).  Following the administrative process, "any party aggrieved by the findings and decision made . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section" in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

Before any such action may be brought to a court, however, the party seeking review must exhaust all administrative procedures under the IDEA:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (brackets in original).

"The exhaustion requirement applies to actions brought under the IDEA, the ADA, § 504, or any § 1983 claim based upon violations of a student's IDEA rights." *CBDE Public Schools* v. *Massachusetts BSEA*, 2012 WL 4482296 at *6 (D. Mass. September 27, 2012)(citing *Weber*, 212 F.3d at 51-52; *Rose* v. *Yeaw*, 214 F.3d 206 (1st Cir. 2000); *Bowden* v. *Dever*, 2002 WL 472293, at *4-5 & n. 6 (D. Mass. Mar. 20, 2002)).  "[S]o long as claims are in some way based on the denial of FAPE, exhaustion is mandatory." *Id.* Until this exhaustion requirement is met, this court lacks

-25-

subject matter jurisdiction.  *Id.* (citing *Polera*, 288 F.3d at 482 (2d Cir. 2002)).

The exhaustion requirement is not excused even if the BSEA cannot grant the precise relief sought, such as when the claims seek only money damages, the claim is infirm, or the student has already graduated from high school.  *Frazier* v. *Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002) ("[A] party must exhaust a mandatory administrative process even if the precise form of relief sought is not available in the administrative venue.").  The exhaustion requirement "facilitates the compilation of a fully developed record"--which does not exist in this case--"by a factfinder versed in the educational needs of disabled children."  *Id.* at 61.  This is particularly relevant here, where absent a developed record on the substantive contentions presented by Michelle and Alicia, I would be required to pass upon these issues in the first instance.  This would be precisely contrary to the procedures outlined in the IDEA, which allow for the application of the unique expertise possessed by BSEA's hearing officers to the evaluation and education of those with special educational needs.  *Id.*

All of the claims asserted in Counts II, III and V relate to Pentucket's alleged failure to provide FAPE to Alicia.  Count II alleges that Pentucket violated the ADA and Section 504 by failing to properly evaluate her and determine that she had

educational disabilities beginning as early as 2002 and by failing to provide educational services, accommodations and related services to Alicia.  Count III alleges that Pentucket and the BSEA discriminated against Alicia and Michelle in violation of the Equal Protection guarantees of the Fourteenth Amendment by failing to provide FAPE to her and by failing to properly train and supervise their staff to recognize and avoid the denial of FAPE to Alicia.  Count V alleges that the BSEA hearing officer deprived Alicia of procedural safeguards mandated by IDEA and thereby denied her of FAPE and seeks reimbursement of the costs incurred by Michelle in providing Alicia an appropriate educational opportunity.

Each of these claims must be administratively exhausted before they may be pursued in federal court.  Because Alicia, who was not legally capable of pursuing and exhausting these claims when they were brought before the BSEA and then dismissed without her expressed agreement prior to the filing of this lawsuit, the BSEA's proposal that they be remanded rather than dismissed, is well founded.[5]

---

[5] To be slightly more precise, to the extent Counts II, III, and V state claims that are substantively distinct from those raised in the May 23, 2012 hearing request, Alicia has failed to exhaust them.  To the extent they duplicate her claims previously filed with the BSEA, they are remanded consistently with my disposition of Count I.  In either event, they are properly before the BSEA, rather than this court, for determination in the first instance.

*C.    Should the Two Related Actions be Dismissed?*

In addition to *Keating* v. *Pentucket Regional School District et al.* No. 1:13-cv-11414-DPW, two additional related matters have been filed, *K.* v. *Pentucket Regional School District Committee et al.*, No. 14-cv-10071-DPW, and *Keating* v. *Pentucket Regional School District et al.*, No. 14-cv-10325-DPW.  These two additional matters assert claims essentially duplicative of those asserted in the May 23, 2012 request for a hearing and the complaint in this matter.  I issued an Order to Show Cause why these two matters should not be dismissed without prejudice in light of a remand of case No. 13-cv-11414 to the BSEA to which no party responded.

Accordingly, I will dismiss the two latter-filed cases without prejudice to the assertion of those claims upon completion of the BSEA's proceeding in the remand of this matter.

## VI.  CONCLUSION

For the reasons set forth more fully above, it is hereby ORDERED

that in Civil Action No. 13-11414-DPW:

A.    The Plaintiffs' motion for joinder of Alicia Keating as Plaintiff (Dkt. No. 55) is hereby GRANTED;

B.    the BSEA's motion to partially affirm and to partially remand (Dkt. No. 64) is hereby GRANTED;

-28-

C.     the defendants' renewed motions to dismiss (Dkt. Nos.
       67 and 69) are hereby DENIED;

D.     Pentucket's motion to affirm the BSEA decision (Dkt.
       No. 57) is hereby DENIED in part; and

the matter is hereby REMANDED to the BSEA for further
proceedings consistent with this Order; and it is FURTHER
ORDERED:

That *K.* v. *Pentucket Regional School District Committee et
al.*, No. 14-cv-10071-DPW, and *Keating* v. *Pentucket Regional
School District et al.*, No. 14-cv-10325-DPW, are hereby
DISMISSED.

**_/s/ Douglas P. Woodlock_**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT